UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 06-254-02 (GK) |
| : | |
| BENJAMIN FEARS, : | |
| : | |
| Defendant. : | |
| : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia ("the Government"), does not oppose the Court sentencing defendant, Benjamin Fears, to a period of probation and imposing the maximum period of supervised release along with such other conditions that the Court may deem appropriate. In support of position, the Government states as follows:

**FACTUAL BACKGROUND**

On August 2, 2006, officers of the Metropolitan Police Department (MPD) conducted a routine traffic stop in the unit block of B Street, S.E., Washington, D.C. When the driver, co-defendant Michael Scott, was unable to produce his driver's license, the officers removed him, along with the passenger, defendant Benjamin Fears, from the car and placed co-defendant Scott under arrest for driving without a permit. A search of the car incident to co-defendant Scott's arrest took place. Underneath the base of the center console of the car, one of the officers felt a handgun. When the officer removed his hand from the console, a plastic bag containing a large chunk of crack cocaine fell from the console. The officer then removed the console siding and found additional plastic bags containing crack cocaine, plastic bags containing numerous small ziplock baggies of heroin, and a loaded Taurus .45 caliber pistol. *See* Presentence Investigation Report ("PSR") ¶ 5.

Defendant Fears, along with co-defendant Scott, were subsequently placed under arrest. After his arrest, defendant Fears was taken to the police station, where he was searched by police. Inside his shoe police located six small ziplock baggies of crack cocaine. Also recovered from defendant Fears was $939 U.S. currency. *Id.* ¶ 5-6. A subsequent analysis of the drugs by the Drug Enforcement Administration ("DEA") showed that the cocaine base weighed a total of 1.1 grams. *Id.* ¶ 7.[1]

Defendant Fears was charged in a four-count indictment with the offense of Simple Possession of a Controlled Substance, in violation of 21 U.S.C. § 844(a).[2] On October 19, 2006, Defendant Fears pleaded guilty to this offense as charged in the indictment. No plea agreement was reached between the parties in this case.

## ARGUMENT

After *United States v. Booker*, 543 U.S. 220 (2005), which rendered the United States Sentencing Guidelines advisory rather than mandatory, a sentencing court must consult the Guidelines and take them into account with other sentencing factors enumerated in 18 U.S.C. § 3553 to fashion a reasonable sentence. *United States v. Price*, 409 F.3d 436, 442-443 (D.C. Cir. 2005). The sentencing factors enumerated in 18 U.S.C. § 3553 fall into three main categories: the nature and circumstances of the offense, the needs of the public, and the history and characteristics of the

---

[1] The crack cocaine with which co-defendant Scott was ultimately charged totaled 125.9 grams, and the heroin, packaged in 93 individual ziplock baggies, weighed 8.4 grams.

[2] Co-defendant Scott is charged with the remaining three counts in this four-count indictment. Co-defendant Scott's charges include Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii); Unlawful Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1); and Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1). Defendant Fears is charged only in the fourth count of the indictment.

defendant. *United States v. Ranum*, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). For the reasons set forth below, the Government does not oppose a sentence of probation in this case, but asserts that defendant Fears should receive the maximum period of supervised release, that is, one year, and that, in addition to any other conditions that the Court deems appropriate, defendant be ordered to: 1) pursue conscientiously a course of study or vocational training, and, within a reasonable period, obtain suitable employment; 2) perform community service; 3) submit to periodic drug testing; 4) support his dependents; and 5) refrain from associating with his co-defendant, Michael Scott.

### *Guidelines Calculations*

Under the Guidelines, defendant Fears is subject to a sentencing range of 0-6 months of incarceration. Because the applicable guideline range is in Zone A of the Sentencing Guidelines, the Court may impose a period of probation. Further, the Court may impose a period of community confinement, home detention, or intermittent confinement.

### *Nature of the Offense and the Needs of the Public*

Although the offense to which Defendant Fears pleaded guilty is a misdemeanor, its severity is somewhat aggravated by the fact that he, along with co-defendant Scott, observed by police within very close proximity to more than 125 grams of crack cocaine and eight grams of heroin, and a loaded firearm. Although defendant Fears was not charged with these more serious offenses, the fact that he also possessed a quantity of cocaine and was found in possession of almost $1,000 cash at the time of his arrest, suggests that he, too, was involved in drug distribution. At a minimum, these facts strongly suggest that he had knowledge of the additional drugs and gun that were found in the vehicle in which he was traveling. Such factors militate in favor of a sentence which includes the maximum period of supervised release and all the conditions mentioned above.

### *History and Characteristics of the Defendant*

Defendant Fears has accepted responsibility for his actions, by virtue of his guilty plea and his admissions to the U.S. Probation Officer. PSR ¶¶ 10, 19. Defendant also has no prior criminal history. *Id.* ¶¶ 21, 22.

On the other hand, during the pendency of this case, defendant at times has failed to comply with the rules of the halfway house, where he has been confined since August 8, 2006, and the orders of this Court. For instance, in his previous Motion to Modify Conditions of Release ("Defendant's Motion"), defendant admitted that he had received three infractions during his halfway house placement, including an infraction for the prohibited use of alcohol, and two infractions for his refusal to comply with halfway house rules. Defendant's Motion, at 3. In addition, although defendant had been ordered by the Court to attend classes daily at Anacostia High School as a condition of his release, he acknowledged in his motion that he had missed four days of school, yet he failed to provide any plausible explanation for doing so. On one occasion, for instance, defendant claimed that he missed school as a result of his "<u>mistaken belief that he had to be in court on October 17 for his co-defendant's motion hearing</u>." Defendant's Motion, at fn.2. Yet, according to Pretrial Services Agency case manager Alicia Glover, defendant actually signed out of the halfway house on October 17, 2006, <u>in order to attend school</u>. Further, although defendant asserted in his motion that he went to court that day, there is no proof that he ever actually appeared in court. Indeed, there is no indication that the defendant ever reported to the courtroom clerk upon entering the courtroom, nor did undersigned government counsel ever observe defendant in the courtroom on that day.[3]

---

3/    Given that the Court had imposed a rule on potential witnesses in the case that day, undersigned government counsel thoroughly surveyed the courtroom in order to assure that there was no one in the courtroom, at any point in time, who might violate the rule on witnesses. Contrary to

Thus, it is clear that defendant violated halfway house rules on October 17, 2006, as his whereabouts then are unknown even to this day.

Defendant also claimed in his motion that he missed school on two other occasions because the halfway house had been on lockdown. Defendant's Motion, at 3. However, no halfway house official confirmed that defendant was unable to attend school for this reason. Defendant also claimed that he missed school on one other occasion because he forgot his school identification. *Id.* Yet, he failed to explain why he could not have simply returned to the halfway house, retrieved his school identification, and returned to school on that occasion.

In sum, during the pendency of the case, defendant at times has demonstrated a failure to comply with both the rules of the halfway house in which he is currently placed, and the Court's instruction for him to attend school regularly. Furthermore, defendant, who is currently unemployed, has acknowledged that he has two infant children, yet does not regularly pay child support. PSR ¶¶ 28, 37. In addition, he admitted that, up until the time of his arrest in this case, he was "using marijuana everyday prior to his arrest and smoking crack about 'every other day.'" PSR ¶ 33. These facts and circumstances together suggest that a sentence of probation that includes a maximum period of supervised release, along with the conditions mentioned above and any other conditions the Court deems appropriate, is both reasonable and appropriate to achieve the aims of sentencing.

---

the defendant's assertion, the defendant did not appear in court on October 17.

**CONCLUSION**

WHEREFORE, the Government respectfully submits that it does not oppose the Court sentencing defendant Fears to probation and a maximum period of supervised release, along with conditions that the Court deems appropriate.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

BY:   /s/
Donnell W. Turner
Assistant United States Attorney
Maryland Bar
555 Fourth Street, N.W., Room 4649
Washington, D.C. 20530
(202) 305-1419