IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Cr. No. 06-254 (GK) |
| v.       ) | |
| ) | |
| BENJAMIN FEARS     ) | |
| ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant, Benjamin Fears, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Fears respectfully asks the Court to sentence him to time served.

**BACKGROUND**

On August 2, 2006, Mr. Fears was arrested and taken into custody. At a detention hearing on August 8, 2006, Magistrate Judge Kay released Mr. Fears to a halfway house. The government filed a four-count indictment against Mr. Fears and his co-defendant, Michael Scott, on August 31, 2006. Mr. Fears was charged, in Count 4 only, with Simple Possession of a Controlled Substance, in violation of 21 U.S.C. § 844. On October 19, 2006, Mr. Fears pled guilty to the indictment; no written plea agreement was involved. Mr. Fears is scheduled to be sentenced before this Court on January 12, 2007, at 4:15 p.m.

**DISCUSSION**

**I.    THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound

1

to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 543 U.S. 220, 264 (2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

## II.   UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. FEARS SHOULD RECEIVE A SENTENCE OF TIME SERVED

### A.   **Statutory Provisions**

Pursuant to the applicable statute, the maximum term of imprisonment for the offense at issue is 1 year.

### B.   **Advisory Sentencing Guidelines**

*(I).   Applicable Guideline Range*

The Probation Office, consulting the 2006 edition of the Guidelines Manual, has

concluded that the total offense level in this case is 6 and that Mr. Fears's criminal history category is I, resulting in an advisory Guideline range of 0-6 months. This advisory sentence falls in Zone A of the advisory Guidelines.

    C.    **Section 3553 Factors**

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

    *I. Nature of the Offense*

While Mr. Fears in no way wishes to diminish the seriousness of the offense, he notes that he is charged only with simple possession of a controlled substance, a crime which is relatively mild in comparison to most of the controlled substance act violations in federal court. He also notes that this is his first offense. Though the government argues that Mr. Fears "was involved in drug distribution," Gov't Mem. At 3, a grand jury indicted him solely of simple

possession, and he was not named in any of the other three counts of the indictment.

*II. Characteristics of the Defendant*

Mr. Fears struggles daily with the fact that he is a young man of only 20 years who has no parents. When Mr. Fears was 5 years old, his father was arrested and imprisoned. Though his father eventually died when Mr. Fears was 17, he essentially lost his father when he was 5. Mr. Fears was raised by his mother, who cared for him, supported him, and kept him in line. Thus it was hugely upsetting for Mr. Fears when she developed lung cancer in 2002. The family moved in with his grandmother and Mr. Fears rarely left her side, caring for her and for the family throughout the remainder of her life. In 2004, just 3 months before his father was fatally shot, Mr. Fears's mother passed away. This was, and is, a heavy burden for a young man.

Though Mr. Fears feels angry, abandoned, and alone, he knows that he has responsibilities and obligations. He and his girlfriend have been together for three years and they have a good relationship. They have two children for whom he cares very much and for whom he supports in any way that he can. He knows that the success of his future depends upon him getting an education, which is why he has made a determined effort to continue attending classes at Anacostia High School so that he can graduate this year.

Mr. Fears understands that he is at a turning point in his life. He would like to take a turn for the better so that he can support his family and make a future for himself. It is not easy being only 20 years old and thrust into the position of brother, father, partner, and caretaker, all at the same time. But he knows that this is what he must do, and he looks forward to dealing with all of his obligations to this court and moving forward.

### III.  Appropriate Sentence

Given all the circumstances, it would appropriate in this case to sentence Mr. Fears to time served, followed by a period of supervised release.[1] Mr. Fears was incarcerated from August 2, 2006, to August 8, 2006.  He was then released to a halfway house, and on the date of this sentencing he will have served over five months there.  Mr. Fears's advisory guideline range in this case is 0-6 months.  Accordingly, he has already served almost the maximum amount of time in this case in community confinement.  Though the five months he has spent in the halfway house do not technically count as "time served" for purposes of sentencing, that is the effect they have had on Mr. Fears.  In that time, he has been away from his family and his children and been forced to understand the consequences of his actions.

With respect to the government's position that Mr. Fears has not been compliant with the rules at the halfway house, it is important to note two things.  First of all, two of his three infractions were for extremely trivial incidents: not making his bed, and sleeping in.  While Mr. Fears understands that he must comply with the rules by which he is bound, he takes issue with the assertion that these two very minor slips warrant a severe increase in his sentence.  Second, defense counsel spoke with his case manager at the halfway house, and she indicated that all infractions were taken care of internally, and that Mr. Fears has been adequately disciplined.  The

---

[1]  In its memorandum, the government asks for both "a period of probation" and "the maximum period of supervised release."  Gov't Mem. at 1, 3, 6.  However, this is not a legal sentence.  Under 18 U.S.C. § 3582(a), "The court, in imposing a sentence to a term of imprisonment for a felony or misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . ."  A defendant may only receive supervised release after a term of imprisonment.  Probation is not a term of imprisonment.  Therefore, a defendant may not receive supervised release after a sentence of probation.  See also U.S.S.G. § 5C1.1 (distinguishing "imprisonment" from "probation" and demonstrating that supervised release may only follow imprisonment).

halfway house is set up in such a way that the administrators have structures in place to help their residents comply with the rules, since they are best situated to do so.  In Mr. Fears's case, his infractions have been dealt with.  It is unnecessary to punish him twice.[2]

With respect to the government's assertion that Mr. Fears should be more severely sentenced because he was truthful with the probation officer when he told her that he used drugs, undersigned counsel has two comments.  First, Mr. Fears was *truthful*.  He has been extremely honest throughout this whole process, he admitted that he turned to drugs because both his parents are dead, and he is not opposed to drug counseling.  He should not be punished for being honest and trying to get his life back on track.  Second, when the probation office conducted a drug test on Mr. Fears on November 1, 2006, the result was negative for all illegal substances.  Mr. Fears is not opposed to the court imposing drug tests, but he submits that he should be given credit for being able to come clean and into compliance with the Court's order.

The bottom line is that this is Mr. Fears's first offense.  He immediately accepted responsibility in this case by entering a guilty plea, saved valuable court resources by not pursing a motions hearing, and he has complied with the obligations set forth by the court.  Mr. Fears's advisory guidelines are 0-6 months, a probation-eligible sentence, and he has already spent 6 days in jail and over 5 months in a halfway house.  Mr. Fears has been adequately punished, and it is time to allow him to make amends.

---

[2] The government makes much of Mr. Fears's four absences from school as well. Again, though the government insists that there is no "proof" that these absences were excused, there is also no proof that they were not.  Mr. Fears in fact called undersigned counsel after the October 17 hearing to ask her why the hearing was for Mr. Scott only, which indicates that he did believe he was supposed to attend court that day.  Rather than engage in a colloquy of hypotheticals, undersigned counsel submits that Mr. Fears has openly admitted to the four absences and has proffered legitimate excuses for each one.

## **CONCLUSION**

 For the reasons set forth above, as well as for any others the Court may deem fair and reasonable, Mr. Fears asks the Court to sentence him to time served. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

            Respectfully submitted,

            A.J. Kramer
            Federal Public Defender


            _____/s/_____
            Rita Bosworth
            Assistant Federal Public Defender
            625 Indiana Avenue, N.W.
            Washington, D.C.  20004
            (202) 208-7500 ext.126